**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GREGORY A. RAEL,

     Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[*]

     Defendant - Appellee.

No. 16-1212
(D.C. No. 1:14-CV-01384-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

    Gregory Rael appeals the district court's judgment affirming the

Commissioner's denial of his application for Social Security disability insurance

benefits and supplemental security income. Rael raises a single issue on appeal:

whether the administrative law judge (ALJ) ignored or failed to discuss the opinion

of his treating physician, Dr. Elaine Rusin, that Rael can only rarely perform postural

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Nancy A. Berryhill is substituted for
Carolyn Colvin as the Acting Commissioner of the Social Security Administration.

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

activities and can only occasionally reach. Because substantial evidence supports the agency's factual findings and it applied the correct legal standards, we affirm. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing our review of the Commissioner's disability determinations).

## BACKGROUND

Rael applied for benefits alleging he became unable to work in October 2010 due to chronic back pain.[1] Rael received treatment for his lower back pain from physician R. Lindsey Lilly from March 2007 to May 2010. Lilly's treatment notes indicate Rael had pain in his lower lumbar region, but his treatment notes don't indicate that Rael had any postural limitations or reaching limitations. In his last two examinations, in January and May 2010, Lilly's examination of Rael's posterior lumbar spine found no tenderness or muscle spasms and normal range of motion, though with pain. Lilly placed no functional limitations on Rael and recommended spine strengthening and flexibility exercises.

Rael was next examined in June 2011 by consultative examiner Thurman Hodge. Hodge found that Rael had normal range of motion in his lumbar spine and his upper extremities were "[n]ormal and equal bilaterally with regards to motor, sensation, reflexes and pulses." Aplt. App. at 199. Hodge found that Rael's shoulder, elbows, and forearms were "[n]ontender," with "no abnormality of range of motion." *Id.* Hodge found no cervical or thoracic spine impairments or upper

---

[1] We limit our summary of the medical evidence to that which is relevant to Rael's challenge to the ALJ's assessment of Rael's postural and reaching limitations.

2

extremity impairments, placed no restrictions on Rael's ability to reach, found that all of Rael's muscle groups were "5/5 strength bilaterally," and found that Rael could "bend repeatedly." *Id.* at 200. Hodge noted that Rael refused to attempt to squat due to back pain, but stated that Rael had not given a full effort. He opined that in an eight-hour day, Rael could sit for six hours, stand and walk for four hours, bend and squat occasionally, lift 30 pounds, and crawl and do repetitive motions throughout the day. *Id.* at 201.

Treating physician Rusin examined Rael between November 2011 and December 2012. Her November 2011 notes state Rael complained of lower back pain and had a decreased range of motion in his lower spine and a waddling gait, but had normal range of motion in his head and neck. Rusin's December 2011 notes state Rael had decreased range of motion in his lower back, a waddling gait, and kept his back stiff, but documented no other limitations. Rusin's August 2012 notes again state Rael walked stiffly with a waddling gait, but do not indicate any range of motion testing. After the August 2012 exam, Rusin completed a "Med-9 form" questionnaire stating Rael had spinal stenosis at the L4-5 level and a herniated disc, and had been disabled since 2008. The same day Rusin completed another form stating that in an eight-hour day, Rael could stand for 30 minutes at a time; was not limited in his ability to use his upper extremities; could lift 20 pounds; could only rarely stoop, crawl, or kneel, seldom squat, and only occasionally reach; and needed to lie down for 30 minutes three to four times a day. *Id*. at 293-94. Rusin said Rael was not limited in how long he could sit, but also said he could only sit one to two

hours at a time. Rusin's September, October, and November 2012 notes state Rael continued to have lower back pain and a waddling gait, but do not indicate any range of motion testing or any other limitations. Rusin did not place any functional limitations on Rael during any treatment visits.

A non-examining state agency physician, Alan Ketelhohn, reviewed all of Rael's medical evidence. Ketelhohn opined that Rael could work at the light exertional level because in an eight-hour day, Rael could occasionally lift 20 pounds, could stand, walk and sit six hours with normal breaks, and had an unlimited ability to push and pull. He opined that Rael did have postural limitations, finding he could only occasionally climb, stoop, kneel, crouch, and crawl. He found no reaching limitation.

After a hearing, the ALJ concluded Rael was not disabled. The ALJ found that Rael's degenerative disc disease of the lumbar spine was a severe impairment, but that he retained the residual functional capacity (RFC) to perform light work,[2] with the non-exertional limitation of only occasionally performing postural activities (balancing, stooping, climbing, kneeling, crouching). The ALJ determined, based on

[2] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the record, testimony from a vocational expert, and the RFC determination, that Rael could return to his past work as a bank teller. The ALJ also determined that Rael could do other sedentary jobs that exist in significant numbers in the national economy. *See Lax*, 489 F.3d at 1084 (describing the five-step evaluation process used to assess social security claims). Thus, the ALJ found Rael wasn't disabled. The Appeals Council denied review, and the district court (a magistrate judge presiding by consent of the parties) affirmed the denial of benefits.

## DISCUSSION

In this appeal from that denial, Rael doesn't dispute the ALJ's finding that he has the exertional ability to perform light work—a finding supported by medical evidence from Hodge, Rusin, and Ketelhohn. Rather, he disputes only the ALJ's non-exertional findings that Rael could occasionally perform postural activities and had no limitation on his ability to reach. As noted, these determinations are consistent with the opinions of both Hodge and Ketelhohn that Rael could occasionally perform postural activities and had no reaching limitation. Only Rusin opined that Rael could rarely perform postural limitations and could only occasionally reach. Nevertheless, Rael argues on appeal that the ALJ failed to explain why he discounted Rusin's postural and reaching limitations, violating the applicable ruling requiring that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

5

We recently reviewed the considerations an ALJ must give to a treating physician's opinion in *Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016). There, we pointed out that an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Id*. (ellipses, citation and internal quotation marks omitted). Further, if the ALJ decides the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record . . . the ALJ must give the opinion controlling weight." *Id*. at 1331 (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id*. (internal quotation marks omitted). In making this determination, the ALJ may consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1331-32 (internal quotation marks omitted).

Rael cites *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), as support for his argument that the ALJ failed to explain why he discounted Rusin's opinion regarding postural and reaching limitations. In *Winfrey,* we held that an ALJ's RFC determination didn't accurately reflect a claimant's impairments when the ALJ found a medical opinion "entirely credible," but didn't include all its assessed limitations. *Id*. at 1024. Rael suggests that as in *Winfrey*, the ALJ here adopted all of Rusin's opinion, but then failed to include her non-exertional limitations. Rael points to one sentence in the ALJ's decision as support for this comparison: "'[t]he undersigned opts to give some weight to [Rusin's] first assessment, and adopt her findings, as it does overall comport with those of Drs. Hodge and Ketelhohn, who found [Rael] can work at the light exertional level.'" Aplt. Opening Br. at 16 (quoting Aplt. App. at 19).

But Rael's argument relies on the faulty assumption that the ALJ, by saying she "adopt[ed] [Rusin's] findings," necessarily accepted *all* of Rusin's findings. Our review of the ALJ's discussion in its entirety reveals that the ALJ adopted only Rusin's restrictions at the light exertional level and gave some weight, not controlling weight, to the whole of her opinion. And the ALJ properly provided specific, legitimate reasons for giving only some weight to Rusin's opinion, namely: (1) Rusin said Rael was totally disabled since 2008 yet Rusin had only treated him since November 2011; (2) Rusin said Rael was totally disabled, but in the same month she inconsistently reported he could  perform light exertional work; (3) Rusin made her findings using conclusory checkmarks providing no explanation of the

7

evidence she relied upon; (4) Rusin's treatment notes didn't support her opinion because they contained no evidence she ever examined Rael's range of motion in his upper and middle extremities, nor did she ever describe any motor, reflex, or sensory deficits; and (5) Rusin's findings were inconsistent with the overall medical record because she opined Rael had spinal stenosis with a herniated disc when the imaging did not support that finding.[3]

The ALJ appropriately considered each of these factors in discounting Rusin's opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And we agree with the district court that the ALJ only adopted Rusin's findings that Rael could do light exertional work because those findings were consistent with the findings of Hodge and Ketelhohn, whose opinions the ALJ gave great weight.

Rael also contends the ALJ acted inconsistently with our direction in *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), in which we held "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Rael also cites *Chapo v. Astrue*, 682 F.3d 1285, 1291-92 (10th Cir. 2012), in which we similarly held the ALJ erred by failing to explain why he accepted one portion of a treating physician's

---

[3] The Commissioner also notes that objective tests support the ALJ's determination that Rael could occasionally perform postural activities, including MRI findings in December 2009 and February 2012 showing no impingement or encroachment on his nerves or spinal cord. But the ALJ didn't articulate this as a reason for giving only some weight to Rusin's opinion, and we agree with Rael that it can't be used to support the ALJ's decision now. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (holding the "court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

opinion as credible, but discounted without explanation another portion, which was not contradicted by any other medical source. But Rael's argument ignores a key factor present in *Haga* and *Chapo* but not present here—*i.e.*, Rusin's non-exertional findings were contradicted; Hodge and Ketelhohn both opined that Rael could occasionally perform postural activities and had no reaching limitations. And here, unlike in *Haga* and *Chapo*, the ALJ explained his rationale for applying varying weights to different aspects of the treating physician's opinion.

Under these circumstances, we conclude substantial evidence supports the ALJ's decision and we discern no legal error. Thus we affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge